Oh, and we'll take a break after the first case, because after an hour of FERC and El Paso very exciting area of the law, we'll need a break. So we will call the case 14-60822, El Paso Electric Company v. Federal Energy Regulatory Commission. We'll begin with Mr. Pearsall. Yes, ma'am. May it please the court. My name is Patrick Pearsall, and I'm here today on behalf of El Paso Electric Company, the petitioner in this case. Today I plan to focus on El Paso's first three appellate issues, which are that the commission erred by adopting compliance orders that arbitrarily ensure free ridership in the West Connect region. These orders require the customers of the jurisdictional utilities in the West Connect region to subsidize benefits provided to the customers of non-jurisdictional utilities in the region. This is improper as a matter of law, because it violates the cost causation principle and will result in unjust and unreasonable rates, which is contrary to basic purpose of Order 1000. Now when I get there, I will address El Paso's second and third appellate issues together, because they are interconnected. And the second issue is that the commission violated the APA by requiring that the West Connect Planning Management Committee, which is referred to as the PMC in the briefs, cost allocation determinations to become binding at the planning stage, and that the commission unlawfully sub-delegated its duty to the PMC to determine just and reasonable rates if the commission does not intend to review the PMC's cost allocation determinations. That's why we didn't get to see one in the record excerpts. We had to print it out. Yes, it was printed out. Well, I still don't understand a lot about your lawsuit. To begin with, before 1000, the order you're attacking, did the Energy Commission, did they have authority to decide that the non-jurisdictional entities would participate in the decision how to allocate transmission line improvement or building? Was it all voluntary before 1000? That's my question. In the West Connect region, it was all voluntary before Order 1000, yes, Your Honor. And they had no problem? And they had no problem for the most part. And to explain a little backdrop about that, Order 1000 was addressing nationwide issues, but nationwide didn't have the same interconnected nature that exists in West Connect. And because of that interconnected nature where the non-jurisdictional utilities and the jurisdictional utilities basically require reciprocal access to each other's systems, that reciprocal need for each other effectively required them to work together to alleviate some of the free ridership problems that FERC was addressing in Order 1000 and everywhere else. So Order 1000 comes out, the jurisdictional utilities, as a matter of law, have to comply, which is why they filed the first two compliance plans that attempted to honor the uniqueness of the West Connect region's historical planning process and successes of that by eliminating free ridership. And they did it with the hope that FERC would continue to honor its statements in Order 1000 that it would respect the unique characteristics of each planning region. But what happened was that FERC picked and chose different pieces of the compliance process. But there was never any contention that FERC had the authority to decide that the non-jurisdictional entities would participate. No, not specifically. It was all voluntary. It was all voluntary, but FERC does have the authority under the FPA to do that. FERC didn't exercise it because FERC assumed, based on this nationwide understanding of how the reciprocity process would work, that people would join. And there's specific quotes in Order 1000 that says, in 1000A, that says the entirety of its process is based, the underlying process is the assumption that non-jurisdictional utilities would in fact enroll and subject themselves to the cost allocation process. Pretty much until the second order, they're assuming voluntariness. And then it's in your rehearing petition to the second order where you refine your we don't want binding cost allocation generally to, oh, and much more specifically, binding cost allocation for us derogates Order 1000 because it's excluding beneficiaries who therefore won't have to pay. That's how I saw, it seemed to me, in your rehearing to the second order. That's where it gets narrowed to the issue before us. As to the free rider point, that's effectively correct. Okay, well, if that's correct, then I agree with you that the commission doesn't really ever answer that other than to say we don't have control over them, but Judge Pillard in the South Carolina case and Judge Cudahy in whatever the Illinois Commerce case, they both articulate about six different answers that prevailed in the D.C. Circuit, right? They say, well, number one, we can be incremental. Number two, we don't have to be exact about how we allocate costs. Number three, there's this reciprocity condition that we can use and we are confident. Four, we think that they will end up complying. It's premature if you say they don't. And five, maybe one day we'll use our authority under 211. And that was enough for the D.C. Circuit. So why wouldn't that be enough still for us? Well, we're in a different position. Order 1000 was at the time saying here's just our goal. We're not going to lay out. All we're doing is requiring a mandate for methods and processes. Go to your specific regions, honor your unique characteristics, and devise something that honors these. So as to the idea of cost causation and whether or not it needs to be perfect, it doesn't. But it has to be better than what FERC has done here. What if you just had one non-jurisdictional utility? In what region? In your whole region. Well, effectively, there is an appeal of that in the D.C. Circuit in the northwest. When you say they don't have to be exact enough, but I take it what you mean by that is well, here in our region, we've got 11 and 10. Oh, okay. So it's a massive imbalance. That has to be your suggestion. Therefore, it's right this minute. We can predict it won't be just and reasonable. We can predict it won't be just and reasonable because these orders, the ones before you, require the reallocation of costs from non-jurisdictional beneficiaries. It doesn't matter how many. As much as it requires the reallocation of costs to the jurisdictionals, and FERC has made absolutely no attempt to quantify and say that providing no costs to the non-jurisdictionals and just moving those costs over to the jurisdictionals is still roughly commensurate with the benefits provided. But why aren't we at the sort of – that was what Edison and the ITC petitioners said. They said it hasn't gone far enough. And the answer was essentially we'll wait and we'll see what the project is. Well, and we don't have to wait any longer because we know now that in these orders, the process adopted with the CTO process where they can elect not to pay, every non-jurisdictional utility in this region – we don't have to speculate – every non-jurisdictional utility in this region has chosen to be a CTO, which shows that their intent is to not pay or to, on behalf of their customers, avoid costs that are plainly avoidable under these. And this is different than in the past when they had to work together. It's not surprising to me that if you give me an option between paying and not paying, I'll probably pick not paying. So that's not surprising, but you're saying now we know for a fact that that's happened. Let me ask you this. If we were to agree with you on your Issue 1 and that's it, nothing else that you said. We agreed with just Issue 1. What would be the remedy? What precisely would we do and then precisely what would happen next? Okay. What we would ask you to do is reverse and remand the orders as to that point consistent with what I would assume would be laid out in your opinion that compliance with Order 1000 requires compliance with the cost causation principle, which means that… So are we sending you back for more discussion if we agree with you on Issue 1? Okay, so we can't do anything other than to say this isn't – what FERC did isn't right, go figure it out. So then are you going to be back in this morass of offering suggestions and then rejecting it and whatever? I don't think we would be, Your Honor, because we'd have further direction on what actually has to be in an order. As opposed to where we came here and FERC has made suggestions like, well, we can balance cost causation versus identifying more projects. And what we're saying is no. Order 1000 linked both of those. You have to make an attempt to do both. You can't just say… Okay, but I'm not excited about the idea of sending you back in some vague, convoluted thing. You keep saying we would give all this guidance. What guidance are you asking us to give that would actually be helpful in getting this to move forward? Again, assuming arguendo, and I'm not saying we'll rule this way, that we agreed with you on Issue 1. The guidance would be similar to the guidance that was provided in those Illinois Commerce case decisions that Judge Higginson mentioned earlier. In those cases, it got sent back twice to FERC. Because FERC, and the direction was essentially, you have to show, you have to quantify how these actions are, and the costs you're allocating are roughly commensurate with the benefits being provided. Here, we have a situation in which, under the current plan, benefits have clearly been identified for the non-jurisdictional. But the costs for those benefits are being moved over to the jurisdictional. Okay, stop there. Can you give me a record site as to where I would love to see that cost comparison? If you say here, benefits have been identified that will accrue to the non-jurisdictionals, where exactly in the record? Nothing general. Record citation. The record citation would be in, for El Paso, it would be the attachment K to their tariff. And I don't have the JA.page, but I can provide that. Attachment K. And that will articulate, sort of, this project will have this amount of benefits for these non-jurisdictionals, and those aren't going to be accounted for? What's going to spell that out? What it articulates is the entire planning process, and then it gets to the point where it has a section where it says, if you look, you enroll as a CTO, and you move out, you choose to be a CTO and you don't want to do it, then it explains that here's what happens to those projects, and the costs of those projects have to be reallocated to the benefiting jurisdictional utility. Assuming that there are at least two or more jurisdictions. If it was just one and one, then it would be removed from selection in the regional process. I guess the specificity helps, because I have the same concern Judge Haines did. So, one, I remember, the second order, they had the Black Hill project. They specifically required them to recalculate if you don't count the non-jurisdictionals. So, could you list the projects where we would find in the record where there is this beneficiary, are the following non-jurisdictionals, their costs now are going to be loaded onto the jurisdictions? Okay, well, we can't just be clear. There have been no projects actually selected. That's what I thought. So, then, why isn't the Commission's brief reference to this still being premature? I'm sorry. Why isn't that an appropriate observation if they have to then accept that you will still, you won't have a collateral bar to an attack on these orders down the road? The key to that point is that these orders themselves, we're saying these orders themselves will result in just and reasonable rights. So, what the Commission is suggesting is that down the road, a developer comes in and is 205 proceeding. Why can't you do it then when we know for a fact, well, in that 205 proceeding, if we didn't appeal here and that developer is going to come in with these tariffs, hold them up and say these are binding on you, for lack of a better word, and this is just and reasonable, this reallocation process is just and reasonable, you don't get to go back and reassess. Okay, but what if we, Judge Higginson is suggesting that we affirmatively say, we hereby kick the can down the road, have a nice day. Then what happens? We'll find a way to say that in Latin. If you said, and I respect that, but if you affirmatively said, look, FERC is committed to kicking the can down the road and no one will be able to waive these tariffs in front of us, then that would provide us some protection, I would assume. Is that a solution? I don't know if legally it is. And why is it or isn't it? I don't believe, I don't know necessarily that it is a legal solution, because once these orders, if you affirm these compliance tariffs, they are just and reasonable. And these tariffs require that reallocation. So you're saying that we can't decree the res judicata effect of our own decision? That's what I'm questioning, whether or not that would actually be binding. Binding on you guys? On FERC in the next proceeding in that 205. Binding on the D.C. Circuit where the next group will go running? I wish they would, by the way. Just saying. Okay, go ahead. Well, quickly, if I can move on. To the nut of the question of why on our binding cost allocation and permissible subdelegation, FERC has said that we've misconstrued what they mean by binding, that it doesn't create an obligation to pay or a right to be paid. They said that only actually arises if and only if what we've suggested, the developer comes in for a 205 proceeding. And we just don't know what, the question is, what does that clarification actually mean? Does it mean that in that future 205 proceeding, the developer has a burden of proof to assume just a reasonable rate? Okay, I gave you all extra time, so I'm going to enforce it. Thank you. Carefully. No problem. Okay, Mr. Skies. May it please the court. My name is John Daniel Skies, and I represent Accel Energy Services Incorporated and its operating company affiliate, the Public Service Company of Colorado, one of the public utilities in the West Connect planning region that is supporting El Paso Electric Company in its appeal. All of the public utilities in the West Connect region are required to have the same planning and cost allocation provisions in their tariff. Thus, as a result of FERC's order, public utilities are required to jointly plan for the needs, the transmission needs, of non-jurisdictional utilities that choose to participate as coordinating transmission owners. But then if those non-jurisdictional utilities decide not to pick up the costs allocated to them for the portion of benefits that they receive, the jurisdictional utilities, including the Public Service Company of Colorado and El Paso, are required to pick up the entire cost. This free ridership is inconsistent with longstanding principles of just and reasonable rates under the Federal Power Act and also departs from the requirements of Order 1000. Both FERC and the courts have long held that rates are only just and reasonable to the extent that they adhere to the cost causation principle. I mean, once you call somebody a free rider, it's kind of hard to say, oh, yeah, we'll let somebody be a free rider. So I appreciate that analysis, but I'm still a little bit hung up on the discussion I just had with your colleague, and I wonder if you have any thoughts, A, on remedy, if we agree with you all on Issue 1, and B, this whole kick-the-can-down-the-road theory of judging. Thank you, Your Honor. Yes, specifically on the remedy, what we're asking that the court do is to direct that FERC remand the decision and then direct that FERC only approve a cost causation or cost allocation methodology where costs are allocated roughly commensurate with benefits, such that there has to be some relationship between the benefits that utilities receive and the costs that they're allocated. And in particular... But don't they claim they've already done that? They do claim so, Your Honor, but... So how can we order them to do something new that they say they've already done? How is that helpful? How does that advance the ball? Right. I think the important thing here is to include a directive that intentional free ridership that results from their decisions is inconsistent with cost causation. They can't require us in our tariffs to plan for the needs of these utilities that participate as coordinating transmission owners and then require us to go ahead and pay for their projects if the coordinating transmission owners choose not to pick up the bill. Okay. So what about the exchange that was had with Judge Higginson about is this premature and so on, which I then colloquially called the kick the can down the road, but I'm sure Judge Higginson would have a better way of putting it. But whatever it is, why isn't it premature? Sure. The concern that we have here is if we were put in a position where we had to wait for a project to come out and be approved through the process and go to FERC and have official rates put in place our remedy then would be subject to section 206 of the Federal Power Act. So it would be our responsibility as public utilities to demonstrate that the rates are no longer just and reasonable. And so it shifts the burden onto us. But more importantly, under section 206, and as this court found in the Louisiana Public Service Commission versus FERC case in 2014, if we file a 206, then we're going to be stuck with whatever that first project was. And we'll say, okay, yes, going forward you're going to have to change your tariffs so that this doesn't happen again. But we're going to be stuck with that first project and the free ridership that results from the tariffs as they come out. So you're not worried, though, about the ratio-dichotic, or whatever the right phrase is, effect. In other words, you think we can decree our own outcome and say we're not deciding this, blah, blah, blah, we're waiting for the next project. And that would be problematic? Yes, Your Honor. I think, in particular, if this court is clear that cost causation isn't simply a policy that FERC can choose to disregard, but instead is intrinsic to every just and reasonable cost allocation, then that means FERC cannot redo what it's already done here. But what about the overarching problem of their limited authority over the non-jurisdictional utilities? Is there a case that explores that? Your Honor, I think that case did address sort of the two ways in which FERC can address non-jurisdictional participation. And I think, ultimately, what we have proposed all along in our second compliance filing is one possible solution. But ultimately, FERC does have expertise in this area. They could come up with something else. They could choose to use 211A, although we have not asked that they do so. But ultimately, what they could do is say that there's a cost around where if there are benefits to a coordinating transmission owner, they're not picking up that cost. They can't be bound to it. Therefore, that project doesn't have mandatory binding cost allocation. People might still go through with it. The trouble with that is that would involve, as they pointed out when you proposed that, almost all the projects in your region. That would just essentially achieve what you first wanted, which was even among yourselves that we would still have significant benefits from the fact that we're having to do this required regional planning that gets everybody together to come up with a regional plan. And we have, as we noted in our brief, a long history of successful regional planning. So there's no evidence in the record that suggests that regional planning at WestConnect will stop. What's your thought on your position is consistent with the South Carolina decision at the D.C. Circuit, or do you think we would have to sort of deviate from their rationale? No, Your Honor. I think what's different here is that when the D.C. Circuit considered the issue of non-jurisdictional participation, what they were thinking of is that a non-jurisdictional can either be all in and bound to cost allocation or all out, not participating, not bound to cost allocation. What we proposed, because we thought it worked best for the D.C. Circuit, they're fully participating the same as all the public utilities except when you get to the point of binding cost allocation. And so that's not an issue that was addressed by the D.C. Circuit. The D.C. Circuit did not envision a circumstance where we would be required to plan for non-jurisdictionals but would not be able to allocate to them. I thought that was sort of Edison's argument at the end. Well, the Edison Electric Institute argument on Section 211A was that the court direct FERC to use 211A in order to make sure that they're required to participate and bound to cost allocation. What we had proposed is only the first part, that they will be required, that they are allowed to participate as fully transmission owners but are not bound to cost allocation. One thing I haven't heard either you or El Paso argue is that essentially FERC's reversed itself from Order 1000 because they didn't have the notice and comment opportunity to respond that the reciprocity condition would be such an important part of their quiver. Yes, absolutely. Would that be relief you'd be asking for? Your Honor, if FERC wants to rely on reciprocity, we want an opportunity at the Commission to put on evidence to demonstrate why it doesn't work. In West Neck, we provided some examples theoretically in our brief but what's your best authority at a circuit level for the circuit saying just that, you get that opportunity? I think the Seventh Circuit decisions and the Illinois Commerce Commission cases all pointed to the fact that FERC had just thrown its hand up and said we'll hope for the best here when it comes to cost allocation. We can't figure it out and what the Seventh Circuit said is FERC, that's not enough. You have to develop a record that supports your decision and there is no record that supports FERC's decision on reciprocity. Okay, thank you. You both reserve time for a vote. All right, Mr. Fulton. Counsel, I hear some questions from my colleagues up here that had occurred to me that the appellants are trying to tell FERC how to run their business ahead of time, that there is no real problem yet. Is that a friendly question? Well, thank you, Your Honors. Ross Fulton here for the commission. That's correct, Your Honor. Yes, this is the concerns that the petitioner and interveners are raising are premature because Order 1000... Okay, so I have to interrupt with a less friendly question. Your brief said they're premature in one sentence with one citation. That's the sum total of your suggestion to us that the arguments are premature. One sentence. Yes, Your Honor. That's what you're telling us right now? I think there is a distinction between the legal rightness of this doctrine and what they're actually requesting from this court, which their concerns... Okay, so is it legally ripe? Correct. We're not arguing that their appeal from these orders is not legally ripe. What we are saying is that their concerns are premature because this is a... the compliance filings in Order 1000 is about the process. And the commission here, as it's entrusted to do with its deference, reached a balance that it essentially did not want the concerns about the ultimate cost allocation to essentially at the front end torpedo the planning and consideration by this region of all beneficial projects. The concerns that the jurisdictional utilities have are about the ultimate outcome. But the commission has the ability down the road, as the South Carolina court found, to address if cost allocation does not end up the way... Yeah, but we're somewhere between South Carolina and ultimately having a project. And so I'm not... I mean, we are at the stage where we know, surprise, surprise, if people are told, well, you can either pay for something or get it for free, which do you prefer? They said, oh, we'll get it for free. So we now know that. He doesn't want to have another problem and he doesn't want to have to be mired in that that far down the road. So why can't we decide now that, look, people don't get to get something for nothing? Well, I'm not actually sure that we are to that point yet, Your Honor. There hasn't been a single... The planning process is still ongoing. There hasn't been a single project that's been approved for cost allocation. In other words, if I say to you, 85 percent, are you going to accept cost? And that utility says, no thanks. Why would they say otherwise, given that y'all aren't going to do anything to them if they do? I'm struggling to see why I would pay for something if I don't have to and nobody's going to make me. Other than being honorable. That's a different question. The Commission found in Order 1000 and it was upheld by the D.C. Circuit that after Order 890, which is the predecessor to Order 1000, there was a whole host of voluntary collaboration between non-jurisdictional and jurisdictional utilities. Where non-jurisdictional utilities did participate, and the reason is that the Commission found that the non-jurisdictional utilities did a whole host of benefits from a more reliable grid. They also have, as Judge Higginson said, errors in the grid such as the reciprocity condition. And so the D.C. Circuit upheld the Commission's position in Order 1000 which is we don't need to yet invoke Section 211A to try to mandatorily regulate non-jurisdictional utilities. Instead, we have a history of beneficial collaboration which even the West Connect parties admit exists here as well. So we have a combination of carrots and sticks. And if it doesn't work down the road, we can revisit that issue. But isn't there an argument that you've taken away all the carrots and sticks now and so this incentive to have all this voluntary handholding has gone away and therefore the world that we have now is going to be hey, we ain't paying and we just want to take and not give. And that you've altered that status quo. I don't think so, Your Honor, because I think the same basis that existed in Order 1000 still exists here on compliance. Namely, there's still the benefits that the Commission found from Order 1000 that the non-jurisdictional utilities will want to participate in. There's still incentives such as the reciprocity condition to induce non-jurisdictional utility participation. And I will say also... Slow down a little bit there, though. I'm sorry. Because the orders are 428 pages long. In all those pages, how often did you mention reciprocity condition as your solution if this gets back? The Commission only mentioned it once, Your Honor. And that's in a footnote? That's in a footnote in the first order. Yes, first reordering order. So really the orders we're reviewing are based on that. How often do they say we will utilize 211 authority? Well, the Commission, again, it doesn't at all. So as I read your orders, it just said, you know, we're really, really hopeful. And the history here is that they have always been collaborating with you. And so if the D.C. Circuit says, well, not at this juncture, as Judge Haynes said, we're a lot further down. But those reassurances were never articulated to El Paso. Reciprocity, 211. So it seems to me we're much closer to where Judge Posner thought the world was in the Seventh Circuit, which is, no, if you're going to rely on these things you never said you would rely on because the hopefulness is gone, you would have had to have said that to them. Two things, Your Honor. The first is that, again, I know this is a compliance filing. So I know this is 400-some pages, but this isn't the case. I mean, it doesn't look like it's implementing. It looks like it's subverting. That's their argument, right? Order 1000 says, beneficiary pays controls. And then you've got slippage from that saying, well, not if 10 of the beneficiaries are outside of our control and we don't want to use 211 authority and we aren't going to mention reciprocity until this gets to be a legal problem in the Fifth Circuit. So all those pages really say is we think you'll be able to collaborate. So, again, the commission is working under the Order 1000 rubric. I note that the jurisdictional utilities did not come to the commission, as they could have, as you suggest, Your Honor, and say, hey, I know you guys, your commission said in Order 1000 and before the D.C. Circuit that you can later invoke 211A if you need to. But, hey, look at where we are now. This isn't working. Invoke 211A and regulate. That argument was not raised before the commission. It's not at issue here. Well, the rehearing petition for the second order raises exactly that. They say precisely the problem here is you've gone awry from Order 1000. You've got the jurisdictional entities that are going to be free riders. Well, I don't see it as awry from Order 1000, Your Honor, because Order 1000 fully admits up front that non-jurisdictional utilities are not subject to the order. But what it says here, the commission doesn't have the power short of using 211A to either regulate non-jurisdictional utilities, to require them to participate, or to invoke cost allocation from those utilities. So the commission, in Order 1000, knowing that it did not have this authority, instead said we're going to use an incentive-based approach. And, I mean, hope is the correct word for it. I mean, the commission, it's not just hope, though. It's based on predictions, it's based on past evidence, and how the commission thinks this process is going to work. The D.C. Circuit upheld that prediction because it's within the commission's expertise to make those sorts of judgments. I mean, the problem is, I have a fair amount of experience as a lawyer and as a trial judge in how kind of settlements and agreements work. And as soon as you, as the judge, or when I was a lawyer, the person who was the judge, would put their thumb on the scale in some way, I can remember one where they said, well, you're a client. Well, the settlement talks changed dramatically after the judge said that. And then when we got a different judge who said, I don't understand what the problem is here, then we were able to settle. So here, it seems to me, you're almost kind of saying, well, God help you, El Paso, or whatever the secular version of that is. And therefore, if I were one of the non-jurisdictional entities, I'd say, well, you know, I'm sitting in a beach chair here. I'm fine. I think, Your Honor, that it's important to put into context that Order 1000 is part of a long continuum of the Commission implementing market-based reforms. The Commission, as it stated in Order 1000, this is an incremental process, that it's invoking its jurisdiction under Section 206, which it can at any time, to ensure just and reasonable rates. As the Commission said both in Order 1000 and as upheld by the D.C. Circuit, if Order 1000's package of reforms, for whatever reason, doesn't work, as they claim that it won't, then the Commission, on its own initiative or on the latter initiative of a party, can invoke Section 206 and reconsider it or address it. But at the time, the Commission found that it's premature, and the fact remains that there still, as I noted, has not yet been a situation where a non-jurisdictional utility here says, I'm, you know, forget it. Even though this project's benefiting me, I'm not going to pay for it. I'm not going to pay for Section 2013. That's correct. None has enrolled. But to actually, and as my colleague will discuss further, to actually get this to become a binding for cost recovery for the parties, they have to file, the developer of the project, once it goes from, what we're in is the planning stage. Once it goes to the actual, okay, this is a project we're going to implement. Once it goes to that stage, the developer files a new tariff for this, then the Commission allocates the cost. So if they get presented with a cost recovery, and it's clear to the Commission that non-jurisdictional utilities are benefiting from this, but none are participating, the Commission can then, and would have to. Okay, if we just issued a one-sentence order in this case that said, affirmed, period, would they then be barred from race judicata from making these arguments you're talking about in the 206? We have a process here to just simply identify projects. In other words, the Commission's trying to move the ball down the field by getting people together to plan as a region. So when it gets to the point that after that region has planned and identified projects, nothing at that stage is binding. It doesn't become binding until, again, the developer gets state approval and gets Commission approval for the actual project. So FERC's position to us today is that if you will not say it's time-barred, that you will not say it's time-barred until a few years later when the facts get clearer and cost allocation is clear that half the utilities aren't paying. It's not these specific orders that they would be challenging? It would be subsequent orders that come out. But I think they would not lose the opportunity to say that the reassurances and the hope and the various vehicles that you're offering to support these orders, in fact, didn't prove to have bite. Let's say down two years from now this process is complete in WestConnect. And we've identified all these projects. We want to get non-jurisdictional utility participation to accept cost recovery. They refuse. Jurisdictional utilities go to the Commission, file their new tariffs, saying, Commission, look at this. These projects are benefiting the non-jurisdictionals. They're not participating. This is not just and reasonable. They absolutely will have the chance to argue that to the Commission. And if that's incorrect, they could then appeal those Commission orders to this court or, as Judge Haynes noted, to the D.C. Circuit as well. We just didn't want them to feel left out. I appreciate that. They always love seeing us, Your Honor. But yes, they will have the opportunity at different stages. What the Commission didn't want to have happen here is this per se rule to prevent planning in the first instance because there's so much interconnection here. I think we need to I haven't really squarely asked you the question I asked counsel opposite, which is if El Paso Issue 1, we ended up ruling in their favor and not on anything else, and I know you disagree with that, but let's assume that argument. What remedy would you argue for? How would you write that opinion that fines for them, if you will, and liability for Issue 1 and then has to give some kind of guidance? What would that be? I think, Your Honor, the only thing that I can think of it would say is it would have to go back to the Commission saying that this Commission, your rejection of their proposal for whatever reason was not within your reasonable discretion because it wasn't commensurate with cost allocation and either Commission, you need to consider invoking 211A or come up with some other formula. But ultimately, it's still the Commission speaking through its orders that will, in the first instance, have to determine, given the Court's guidance, what is just and reasonable. Everybody's looking for this guidance but won't tell us what they think that guidance is. Is it because we're supposed to come up with that on our own because we're so smart? No, Your Honor. It's just simply a fact of the matter that just and reasonable, terms like just and reasonable, roughly commensurate cost causation are necessarily somewhat vague, and it's the Commission that has the authority to flesh those out. So, for example, the petitioners brought up Illinois Commerce Commission. Within that decision from the Seventh Circuit, that went back to the Commission to put meat on the bones to try to comply with the Commission's or with the Court's orders. Okay. We'll hear from your colleague. Thank you, Your Honors. Good morning. May it please the Court, Elizabeth Rylander for the Commission. I'm hearing some tension here in the understanding of this case as a compliance filing. Can you move the microphone a little bit? Oh, I'm sorry. Speak up a little bit. Yeah, there you go. I'm sorry. The Commission in Order 1000 laid out six cost allocation principles with which compliance filing should comply. And in the first one in this case, in paragraphs 270 to 280, which is a joint appendix pages 391 to 95, FERC found that the process the parties have laid out in the proposed tariff sheets do in fact comply with that Order 1000 approved process. And in particular, principle one, where recommendability between costs and benefits is required. And that's described in the second order in paragraphs 31 and 55. But what they've proposed as a means to work together is a cost allocation that isn't acceptable because it is non-binding. And the Commission found that despite the fact that these parties want to work together, even though it could give permission for the jurisdictional utilities here to plan for the non-jurisdictional utilities, which it did in paragraph 55 in that second order, the Commission did not comply with the requirements of Order 1000 that the result of the planning process should be a binding cost allocation. Here are the Order's proposed methods for allocating costs. And again, the Commission found that those methods were just too reasonable and in accordance with Order 1000. But as the Order's noted in a number of places, cost allocation is not the same thing as cost recovery. How the costs are allocated is not necessarily what could be proposed to the Commission later in terms of how the costs will be recovered from beneficiaries. You keep saying that, you know, FERC is responsible for doing this, and Judge Reveley made an important point of, you know, y'all have a statutory role, you should do it. However, so do we. And, I mean, if the rule is FERC just gets to do what they want, then we will happily move on to the next case. But I think we have a role here, too. So why, I mean, here they're saying y'all have not fulfilled your statutory role appropriately. And so aren't we entitled to look at that and examine that? Yes, Your Honor. Okay, so explain to me why this problem of free ridership, which goes wholly unaddressed by what you all have proposed, isn't a significant problem that shows that you haven't approved a just and reasonable approach. So free ridership, as the Commission described it, is that individual beneficiaries of a new project have an incentive to defer investment in the hope that someone else values it more and will pay for it up front. The Commission found that that was a given in transmission development, which in turn affects rates. And Order 1000 found that these orders also repeat that the lack of ex-antitransmission cost allocation that identifies the beneficiaries' projects and the ex-antitransmission providers' ability to implement more efficient or more cost-effective transmission solutions. That is the Commission's job under the Federal Power Act. Both Sections 205 and 206 require just and reasonable rates. And both Order 1000 and this compliance filing are intended to further the development of just and reasonable rates to ensure just and reasonable rates. But, I mean, the paragraphs you cite, of course, stand for the early proposition that we shouldn't avoid. Everyone agrees with that. But the point, then, that they brought up in the rehearing to the second order is that what about half the utilities not bearing any costs? So what I want you to do is just as precisely with paragraph references, tell me the paragraph references where FERC responded to that that you wouldn't have in-line roughly comparable costs. So all I'm asking for is FERC said here's why half the utilities being outside will still lead to approximate cost causation. Your Honor, I would refer you to paragraph 32 of the third order which is at JA 1554 where the Commission accepted the jurisdictional utilities efforts to include non-jurisdictional utilities but pointed out that this doesn't mean that jurisdictions can compromise their obligation to comply with Order 1000 through the implementation of a cost application. No reference to use of the reciprocity condition in the third order? I don't believe so, Your Honor. No reference to use of 211? No, I don't believe so, Your Honor. Okay. All right. So the answer is just we don't have jurisdiction over them so we're going to continue to hope. I would say that this goes beyond hope, Your Honor. The parties have expressed that they want to work together. It's a long process which takes two years. That seems like your strongest argument that this is just not, it's not that we have authority to give no answer or that the infrastructure is so important that that priority overcomes cost causation. It's not even really reiteration of the D.C. Circuit that we're moving incrementally  defiantly to hope. The answer is that we can't force them to enroll. Does reciprocity turn on enrollment? I don't think so. Okay. Okay. Well, that would be important. I don't think so. If Your Honor would like, I would like to be short of the answer and follow up by letter but I don't recall for sure. Well, you're nice to offer that. I'm not sure how significant it is but go ahead. Continue with your argument. Okay. Once again, cost allocation and cost recovery are not the same thing. While the commission here has laid out a just and reasonable ex ante process for allocating costs, it will see these projects again when and if there is an effort to recover the costs of these projects. The obligation, the identification of a project in the regional transmission plan as having regional transmission benefits does not carry with it the obligation to build. It may be that these projects do not move forward but the ex ante transmission plan and the ex ante transmission cost allocation provide a foundation upon which they can move forward and that satisfies the commission's obligation to ensure just and reasonable rates. When and if, as the order say a number of times, when and if these projects are built, there may be further filings under section 205 regarding those filings. I would also point out, Your Honor, that there is a specific method laid out in the tariff sheets for identifying beneficiaries of each type of transmission project. Those are in the first order paragraphs 312 to 17, JA 408 to 410. Okay. So I guess I'm not going to let you have time back. So, I mean, does the record reflect whether, okay, forget, no, I don't have a question. Go ahead, you're done. If the court has no further questions, Your Honor. No, you don't want to address any of the other, I realize that I said, you know, that I've been focusing, I've been focusing on issue one. Others have perhaps been focusing on others. Is there anything else that you want to address? And you don't need to. I typically often shouldn't. We'll be glad to address those other issues, Your Honor. Okay. Thank you. Thank you very much. Go ahead. They've solved your racial yukata problems. Are we done? I like their solution. I don't know that it's legally enforceable. They suggested, well, essentially, I mean, let me just ask, are you envisioning that we say, so we say, look, it's premature, maybe not in terms of Article 3 ripeness, but just in terms of sort of prudential prematurity. So you're not waiving anything. You haven't lost anything. Goodbye. See you later. And then a project is proposed. Blah, blah, blah. You file your 206. And then they go, ha, ha, ha. You didn't, you know, you lost over here in this 1000 proceeding. And let's go appeal to the D.C. Circuit or some other circuit. And so, therefore, they won't care what the Fifth Circuit said. Is that what you're worried about? Our concern is pretty close to that. Yes, Your Honor. Is that they would say, well, when we get to that implementation proceeding down the road, that they're going to go, you're collaterally attacking the compliance orders. They say, well, 206 is good enough. But in a 206 proceeding, it presupposes that you're challenging existing just and reasonable rates. So, necessarily by that, it means that these orders have been held to be just and reasonable and until they are changed, unless and until they are changed, they are the law that the jurisdictions and utilities have to follow. And they're stuck with it. We could file a 206 proceeding, but the burden there is going to be different than the burden here. We have to show changed circumstances. We have to show that something has happened to render these orders unjust and unreasonable. And I can't imagine, even if FERC says, well, we won't say that it's a collateral attack. The developer who is identified as the winning developer to build the project and is saying, these cost allocations are binding and you have to pay and I think FERC has to accept them in this 205 proceeding, they're going to come in and say we can't attack. So, we can't bind the world as a problem because there might be other parties not here. So, even if the people standing here were bound, that wouldn't be good enough. Yes. There's numerous parties that we don't know today. But as to the legally right, I think they can see it's legally right. Because we're talking about these points. They're saying, like you said, it's prudentially premature. That was just, I made that up because I'm not really familiar with prudential prematurity. But I think that's really kind of what they're saying. Yeah, exactly. They're way down the road. It hasn't happened yet. But this is, they're saying, and I think they admitted, we're very hopeful they'll work together. Well, hope is... Spring's eternal. Yeah, exactly. Except probably in West Connecticut and all the utilities, the customers of the non-jurisdictional utilities who are going to go up to their... Well, I mean, I have a little bit of a problem with this because it seems like there should be a clear time that you should challenge what's going on. Exactly. And it shouldn't be this kind of moving target of, well, if you challenge it before anything at all has happened, which I think is South Carolina, you're stuck. Yeah. If you wait till there's a developer and yada yada, then it's too late. But now it's premature and so you're sitting there not really knowing. I mean, there needs to be a clear rule to me on when it is ripe and prudentially ripe and everything else when we ought to be where we are and let's decide it. Our position would be that today or whenever you issue your opinion that this case would be the time to decide if we're attacking... Because what? What case authority? What... Oh, well, logically, we are attacking these methodologies. The process is ongoing now. If we solve the process now, we will save the time and effort of engaging in that process, identifying these people, getting all the way to this implementation proceeding where all of these parties have worked to get there only to have it challenged then and thrown back. We should get it right first before we've started identifying projects. Yeah, and doesn't it affect that? I mean, in other words, the likelihood of developers being interested, the way those projects are structured, doesn't the outcome here guide that? Exactly. I think it does. And then, two quick points before my time runs out is one of the things that they've suggested throughout this process is that it's okay to ignore the non-jurisdictionals for part of this cost causation analysis. And one thing I want the court to understand is this is a little inconsistent with their position on planning. So they say, well, you should really consider the needs of the non-jurisdictionals when planning. And those non-jurisdictionals, the orders they've adopted can participate in even proposed projects. But when we get over here to cost allocation, forget about those guys. They don't exist anymore. And it just doesn't make sense that we pay attention to them for one part of the process that's leaked, the planning process, and then we ignore them when we get over to who pays. They just essentially get up and leave the table. Okay. Thank you. Your Honor, just three quick points before we finish this case this morning. The first one is that FERC is in fact just hoping that this all works out. And hope is not a just and reasonable rate. In the second compliance order at paragraph 32, the commission specifically just encouraged the jurisdictional utilities to work with the non-jurisdictionals, relying on the hope that as they have participated in the past, they'll participate in the future. And that sort of hope is not sufficient to satisfy the cost causation principle or the commission's obligations to ensure just and reasonable rates under the Federal Power Act. But Judge Cuddy's point is the infrastructure has got to get built. And the one thing that jurisdictional utilities, you all, are admitting now is you do, you have to have an ex-ante cost allocation. So how do we maintain that, not try to undo that, and allow some consideration at the appropriate time for the free rider problem? Your Honor, what we would like the court to direct, if this is remanded to the commission, as we hope, is a direction that FERC has to come up with a way that cost causation is not simply discarded. We're not asking for a specific proportionality or a particular direction that says this is exactly what it takes. But what FERC has done is simply disregard it  non-jurisdictional, so it doesn't matter. Okay, but what do you do with Judge Reveley's point that, you know, we are generalists as judges on the Fifth Circuit. FERC is the expert. Who are we, in a sense, to tell them how to do their job? How do you deal with that in terms of this guidance we have to give versus the fact that they're the experts? Yes, Your Honor. Specifically, I think the point here is that what the courts have always held is that there needs to be roughly commensurate cost allocation. We're not asking for a specific proportion, just a direction that cost causation is critical and essential to just and reasonable rates and cannot be ignored. Okay. Thank you, Your Honor. Appreciate all the arguments in this difficult case and we will take a ten-minute recess.